IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–02456–RM–MDB

BRIAN HALIK,

      Plaintiff,

v.

ROBERT PINNOCK, Former Officer, University of Colorado Colorado Springs Police
Department, individually and in his official capacity,
LISA DIPZINSKI, Police Sergeant, University of Colorado Colorado Springs Police
Department, individually and in her official capacity, and
CHARLES LITCHFIELD, Vice Chancellor for Administration and Finance, University of
Colorado Colorado Springs,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

      This matter is before the Court on two Motions: (1) "Defendant Charles Litchfield's

Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6);" and (2)

"Defendants Robert Pinnock and Lisa Dipzinski's Partial Motion to Dismiss Under Fed. R. Civ.

P. 12(b)(1) and 12(b)(6)." (["Litchfield Motion"], Doc. No. 13; ["Pinnock/Dipzinski Motion"],

Doc. No. 14.)  Plaintiff has responded in opposition to both Motions, and Defendants have

replied.  (Doc. Nos. 17-18, 20-21.)  The Motions have been referred to the undersigned, pursuant

to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1, for a recommendation regarding

disposition.  (Doc. No. 15-16.).  The Court has reviewed the briefs, the case file, and the

applicable law.  For the reasons set forth below, the Court **RECOMMENDS** that the Litchfield

Motion (Doc. No. 13) be **GRANTED**, and that the Pinnock/Dipzinski Motion (Doc. No. 14) be

**GRANTED, in part, and DENIED, in part**.

**STATEMENT OF THE CASE**

### *I. Plaintiff's Allegations*

*Pro se* Plaintiff Brian Halik ["Mr. Halik," or "Plaintiff"], a disabled veteran and former

student at the University of Colorado Colorado Springs ["UCCS"], brings this action pursuant to

42 U.S.C. § 1983, asserting violations of his federal constitutional rights by the UCCS Vice

Chancellor for Administration and Finance, Charles Litchfield ["Defendant Litchfield"], as well

as two UCCS campus police officers—Robert Pinnock ["Defendant Pinnock"] and Lisa

Dipzinski ["Defendant Dipzinski"].  (Doc. No. 1 at ¶¶ 1-3, 4-8, 11.)

According to the Complaint, on September 10, 2019, at approximately 7:00 p.m., Mr.

Halik, who at the time was an active UCCS student, arrived at a social event on the school's

campus, accompanied by his service dog, "a highly trained German Shepherd."  (*Id.* at ¶¶ 9-11.)

Within minutes of Mr. Halik's arrival, Defendant Pinnock was dispatched to the scene,

apparently in response to a complaint that the German Shepherd was off leash.  (*Id.* at ¶ 13.)  At

approximately 7:20 p.m., Defendant Pinnock arrived and approached Mr. Halik regarding his

dog.  (*Id.* at ¶¶ 13-14.)  Mr. Halik alleges that, even though he "politely requested" that

Defendant Pinnock discuss the matter with him privately, Defendant Pinnock "refused" to do so,

and instead "demanded that the conversation remain in front of other students."  (*Id.* at ¶ 14.)

Plaintiff complains that Defendant Pinnock proceeded to threaten him with arrest unless he

immediately showed his identification.  (*Id.*)  When Plaintiff then "proclaim[ed] [his] right to not

2

provide his identification" on the grounds that he "was not suspected of committing any crime," Defendant Pinnock allegedly "handcuffed Plaintiff with [his] hands behind [his] back, took Plaintiff into custody, separated Plaintiff from [his] service animal, and paraded Plaintiff handcuffed in front of countless other students." (*Id.* at ¶ 15.) Mr. Halik laments that his "body" and "belongings" were then searched "multiple times." (*Id.*) Plaintiff reports that, during the course of these events, Defendant Pinnock made clear to him that he had not committed any crime, reassuring Plaintiff that he was only being detained for not providing identification. (*Id.* at ¶ 16.)

According to the Complaint, Defendant Pinnock was eventually able to confirm Mr. Halik's identity by way of his driver's license, which Defendant Pinnock seized from Mr. Halik's pants pocket. (*Id.* at ¶ 17.) Meanwhile, around that same time, a second UCCS police officer, Defendant Dipzinski, apparently responded to the scene as well. (*Id.* at ¶ 16.)

Mr. Halik alleges that, notwithstanding Defendant Dipzinski's arrival, the two officers continued to "unlawfully" detain him, refusing to remove the handcuffs from his wrists "until long after" his identification had been verified. (*Id.* at ¶¶ 17, 20-21.) Plaintiff further alleges that, during that time, the two officers intentionally deactivated their body worn cameras, so as to "cover up" their "illegal or unconstitutional activities." (*Id.* at ¶ 18.) He complains that, at one point, the handcuffs improperly "self-tightened" around his wrists, due to the fact that Defendant Pinnock failed to "double lock" them. (*Id.* at ¶ 22 & n.3.) Plaintiff alleges that the malfunctioning of the handcuffs caused him to suffer "temporary pain and numbness." (*Id.*) Mr. Halik stresses that, throughout the entirety of his encounter with Defendants Dipzinski and

Pinnock, neither individual "could provide [a] specific policy or law that mandated that officers could arbitrarily detain or arrest students if they did not provide identification." (*Id.* at ¶ 16.)

According to the Complaint, Mr. Halik was eventually released from police custody without charge. (*Id.* at ¶ 23.)  Mr. Halik reports that, ultimately, he was not found to be in violation of any laws or policies arising from the September 10, 2019 incident. (*Id.*)  However, Plaintiff complains that, notwithstanding that fact, Defendant Dipzinski subsequently contacted "numerous UCCS officials" regarding the incident, falsely asserting that Plaintiff had "violated UCCS policy" and "broken the law." (*Id.* at ¶ 25.)  Plaintiff alleges that Defendant Dipzinski did so "in an attempt to cover up her actions as well as those of Defendant Pinnock." (*Id.*)  In addition, Plaintiff alleges that both officers intentionally lied in their respective police reports regarding the September 10, 2019 incident, so as to "cover up their misconduct" and "retroactively justify [their] unlawful detainment of Plaintiff." (*Id.* at ¶¶ 18-19, 25.)

Meanwhile, within hours of his release, Mr. Halik sent an email to the UCCS Dean of Students, which purportedly set forth a complaint narrative of the September 10, 2019 incident, including allegations of misconduct by Defendants Dipzinski and Pinnock. (*Id.* at ¶ 26.)  After then meeting with UCCS investigators to discuss the allegations made in his email, on October 14, 2019, Mr. Halik met with a UCCS Vice Chancellor, Defendant Litchfield, who "reluctantly agreed to open an investigation" into the officers' actions. (*Id.* at ¶¶ 26, 28.)  Defendant Litchfield allegedly assured Mr. Halik that he would personally reach out to him upon completion of the investigation. (*Id.* at ¶ 28 n.5.)  However, Mr. Halik laments that, to date, he has not received any notification that the investigation has concluded. (*Id.* at ¶ 28.)  Mr. Halik likewise laments that, to date, no disciplinary action has been taken against either Defendant

Dipzinski or Defendant Pinnock.  (*Id.*)  Plaintiff alleges that Defendant Litchfield has, in fact, "actively obstructed" the investigation so as "to protect" the two officers.  (*Id.*)  He likewise alleges that Defendant Litchfield "maintains a policy" that allows the UCCS campus police to use "broad and overly vague" provisions of the UCCS Student Code of Conduct as a pretextual justification to "violate the constitutional rights of students and members of the public."  (*Id.* at ¶¶ 28-29.)

According to the Complaint, shortly after the September 10, 2019 incident, Mr. Halik temporarily withdrew from UCCS, "due to overwhelming anxiety and feeling unsafe on the UCCS campus."  (*Id.* at ¶ 27.)  Mr. Halik reports that, since that time, he has not resumed his studies there or elsewhere, causing a "significant setback" to his educational aspirations.  (*Id.* at ¶ 31.)  Plaintiff complains that, due to the extended lapse in his enrollment, the Department of Veterans Affairs has since rescinded his authorization to attend school.  (*Id.*)  Finally, Plaintiff reports that, due to emotional trauma arising from the September 10, 2019 incident, his German Shepherd remains unable to return to service work, despite veterinary intervention and training.  (*Id.* at ¶ 32.)  Plaintiff alleges that this chain of events has "significantly impacted" his physical and mental wellbeing.  (*Id.*)

## II. Procedural History

Based on these allegations, on September 10, 2021, Mr. Halik commenced this federal civil rights action against the above-named Defendants, in their individual and official capacities, asserting violations of his Fourth Amendment rights.  (*Id.* at ¶¶ 37-38.)  In the Complaint, Plaintiff requests an award of monetary damages, as well as unspecified declaratory, injunctive, and mandamus relief.  (*Id.* at ¶ 1.)

On January 11, 2022, Defendant Litchfield responded to Plaintiff's allegations by filing a motion to dismiss the claims against him, in their entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 13.)  Specifically, Defendant Litchfield moves to dismiss the official capacity claims seeking monetary damages and retrospective equitable relief, under Rule 12(b)(1), contending that the Eleventh Amendment confers immunity from those claims.  (*Id.* at 13-14.)  Defendant Litchfield moves to dismiss the remaining claims against him, under Rule 12(b)(6), arguing that those claims are inadequately pleaded, and alternatively, that he is entitled to qualified immunity with respect to those claims.  (*Id.* at 4-12, 14-15.)

Also on January 11, 2022, Defendants Dipzinski and Pinnock filed a separate motion to dismiss under Rules 12(b)(1) and 12(b)(6).  (Doc. No. 14.)  Defendants Dipzinski and Pinnock argue, among other things, that the official capacity claims against them should be dismissed as duplicative of those brought against Defendant Litchfield.  (*Id.* at 8 n.2.)  In addition, they move to dismiss Plaintiff's individual capacity claims against them, in part, on qualified immunity grounds, while Defendant Dipzinski moves to dismiss the remaining claims against her for inadequate pleading.  (*Id.* at 4-7.)  Both Motions are fully briefed and pending.

## STANDARDS OF REVIEW

### I.  Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II.  *Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction that may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings

in which it becomes apparent that jurisdiction is lacking." *Id.* at 909.  The dismissal is without

prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v.*

*Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one

for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  If a party

challenges the facts upon which subject matter jurisdiction depends, a court may not presume the

truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow

affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve

disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### III.  *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.*

*Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id.* at 679–81.  Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 679.

That being said, the court need not accept conclusory allegations without supporting factual averments.  *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the court typically may not look beyond the pleadings.  *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010).  "If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the

court, the motion must be treated as one for summary judgment under Rule 56." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting Fed. R. Civ. P. 12(d)) (alterations omitted). "Pleadings," for purposes of a Rule 12(b)(6) motion to dismiss, however, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Documents attached to a motion to dismiss are considered part of the pleadings, if they are referred to in the complaint, central to the plaintiff's claims, and not challenged as inauthentic. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *accord Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).

Here, Plaintiff has submitted an audio recording and video footage, purportedly showing the contested searches and seizures that took place on September 10, 2019. (Doc. No. 19.) In his response briefing, Plaintiff relies on this footage to argue that Defendant Dipzinski personally participated in the alleged violations of his Fourth Amendment rights. (Doc. No. 18 at ¶¶ 13-16 & n.3.) Plaintiff likewise relies on the footage to suggest that Defendants Dipzinski and Pinnock were each acting pursuant to an unconstitutional policy promulgated by Defendant Litchfield. (Doc. No. 17 at ¶ 7; Doc. No. 18 at ¶ 7.) Defendants contend that the Court may not consider such evidence at the motion to dismiss stage, because the audio and video recordings "were not attached to the Complaint, and many of the arguments are brand new as well." (Doc. No. 20 at 3-4.) Notably, Plaintiff makes no attempt to link the audio and video footage to the allegations set forth in his Complaint. (*See* Doc. Nos. 17-18.) Nor does Plaintiff make any argument as to why the footage should be considered by the Court in connection with the two pending Motions.

Upon careful review of the Complaint, the Court finds the following instances in which

Mr. Halik references audio and/or video footage:

> Defendants Pinnock and Dipzinski claim that upon their separate arrivals on the scene, they each activated their respective **body-worn cameras**. Defendants Pinnock and Dipzinski then claim that both of their **body-worn cameras** mysteriously malfunctioned during that time. When Defendants Pinnock and Dipzinski were reasonably certain that they were no longer going to perform any illegal or unconstitutional activities, they eventually reactivated their **cameras**. Due to the 'malfunction' with the **body-worn cameras**, the officers intentionally lied on their accounts of the incident in their reports in order to cover up their misconduct. Unbeknownst to them, Plaintiff had **audio recorded** the entire interaction with Defendants Pinnock and Dipzinski on Plaintiff's phone.

> * * *

> None of the interaction as detailed by Defendant Pinnock actually happened. The entirety of this false narrative was an attempt by Defendant Pinnock to frame the event in such a way as to attempt to give himself a valid reason to detain Plaintiff. Plaintiff's **audio recording** definitively disproved Defendant Pinnock's allegations.

> * * *

> In Defendant Pinnock's report, he falsely stated that he double locked the handcuffs. However, Plaintiff's **audio recording** and Defendants' **body-worn camera footage** definitively disprove this assertion.

> * * *

> Immediately upon releasing Plaintiff from custody but prior to the conclusion of the investigation, Defendant Dipzinski completely disabled her **body-worn camera**. Defendant Dipzinski then approached Defendant Pinnock and motioned for him to disable his **body-worn camera** in order to further conceal their unlawful activities. At that point, Defendant Pinnock complied and disabled his **body-worn camera**.

(Doc. No. 1 at ¶¶ 18-19, 22 n. 3, 24 (emphasis added).) While Mr. Halik does make multiple

references to audio and video footage, he does not rely on a description of that footage to support

his allegations. Instead, he appears to generally reference the footage to allege that Defendants

Dipzinski and Pinnock turned off their body worn cameras in order to create a "false narrative." (*Id.*)  The allegations of a "false narrative"—and by extension the audio and video footage—are not central to Plaintiff's claims.  *GFF Corp.*, 130 F.3d at 1384.  Moreover, and with respect to the allegations that *are* central to Plaintiff's claims—including allegations that Defendants detained Plaintiff, handcuffed him, separated him from his service dog, and searched him multiple times—the Court is already viewing those alleged facts in the light most favorable to Plaintiff.  The Court, therefore, declines to review or consider the audio and video footage in its evaluation of the pending Motions.  *See Turner v. Garcia-Serna*, No. 20-cv-00281-CMA-KMT, 2021 WL 1186670, at *5 (D. Colo. Mar. 31, 2021) (declining to consider bodycam footage in connection with a Rule 12(b)(6) motion to dismiss, where the plaintiff mentioned bodycam footage in the complaint, but did not discuss its contents or rely on it to support his claims); *Rustgi v. Reams*, 536 F. Supp. 3d 802, 813-14 (D. Colo. 2021) (declining to consider jail surveillance video footage in connection with a Rule 12(b)(6) motion to dismiss, even though the plaintiff embedded screenshots of the footage into his complaint, on the grounds that the consideration of such evidence would be "inappropriate for a proper Rule 12 sufficiency of the pleading analysis"); *Bowles v. Filsinger*, No. 18-cv-02917-CMA-MEH, 2020 WL 70423, at *5 (D. Colo. Jan. 7, 2020) ("Because Plaintiff fails to identify specific bodycam footage upon which he relies to support his deliberate indifference claim and the Second Amended Complaint contains no description of what the bodycam footage will depict, the Court cannot properly consider this outside video evidence referenced in Plaintiff's response [] in evaluating the sufficiency of Plaintiff's Second Amended Complaint."); *c.f. Pittman v. City of Aurora*, No. 19-cv-01947-PAB-NRN, 2020 WL 6586659, at *4 (D. Colo. Oct. 23, 2020) (considering officer

bodycam footage attached to a Rule 12(b)(6) motion to dismiss, where the complaint referred to the footage as "support" for the plaintiff's claims, including by alleging that "[t]he officers' lapel cameras *clearly show* that [the plaintiff] felt threatened, and was exhausted, scared, and humiliated throughout the process of the unlawful search and detention") (emphasis added); *see also Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) (A court has "broad discretion in determining whether or not to accept materials beyond the pleadings").  The Court likewise, in its discretion, declines to convert the pending Motions into motions for summary judgment.  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (holding that the district court erroneously relied upon matters outside of the pleadings in ruling on a Rule 12(b)(6) motion).

## IV.  *Qualified Immunity*

"Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset."  *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)).  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Once a defendant has asserted a qualified immunity defense, the burden shifts to the plaintiff to establish that: (1) the defendant violated a constitutional right; and (2) the right was "clearly established" at the time of the defendant's alleged misconduct.  *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)).  "[I]f the plaintiff fails to

establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016); *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.") (internal quotation marks omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)); *see Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness.") (internal quotation marks omitted) (emphasis in original). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)) (internal quotation marks omitted). The court has "discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Brown*, 662 F.3d at 1164 (quoting *Pearson*, 555 U.S. at 236) (alterations omitted).

**ANALYSIS**

**I.  *The Capacity in Which Defendant Litchfield is Sued***

As a preliminary matter, the Complaint does not specify the capacity in which Defendant

Litchfield is being sued.  Under such circumstances, the Court must "look to the substance of the

pleadings and the course of the proceedings" to determine "whether the suit is for individual or

official liability."  *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1244 (10th Cir. 2007) (quoting *Pride

v. Does*, 997 F.2d 712, 715 (10th Cir. 1993)).  Here, Plaintiff requests monetary relief, including

"[c]ompensatory and punitive damages," as well as declaratory, injunctive, "and other

appropriate equitable" relief.  (Doc. No. 1 at 14.)  Given the type of relief that is sought, and

considering Mr. Halik's *pro se* status, the Court liberally construes the Complaint as asserting

claims against all Defendants, in their individual and official capacities.  *See Pride*, 997 F.2d at

715 (observing that a request for punitive damages points to an individual capacity claim);

*Fenner v. Suthers*, 194 F. Supp. 2d 1146, 1149 (D. Colo. 2002) (construing a complaint seeking

injunctive relief as asserting official capacity claims); *see also Bruce v. Wilson*, No. 13-cv-0491-

WJM-CBS, 2013 WL 5890793, at *4 (D. Colo. Nov. 4, 2013) ("Here, where the Complaint is

not completely clear, the court will presume that the defendants have been sued in their official

and individual capacities.").

**II.  *The Official Capacity Claims***

**A.  *Eleventh Amendment Immunity***

Mr. Halik asserts official capacity claims, seeking monetary damages as well as various

forms of equitable relief.  (Doc. No. 1 at 1, 14-15.)  However, as Defendants correctly observe,

the Eleventh Amendment unquestionably bars the majority of these claims.  (Doc. No. 13 at 13-15; Doc. No. 14 at 7-9.)

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).  The immunity conferred by the Eleventh Amendment extends to a state and its instrumentalities, including those entities deemed "arms of the state." *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  Eleventh Amendment immunity also extends to state officials sued in their official capacities for monetary damages or retrospective equitable relief. *Williams*, 928 F.3d at 1212; *Will v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).  This is because a suit against a state official in his official capacity is a suit against the official's office, and therefore, is no different from a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.").  Moreover, a § 1983 action may only be brought against a person. *See* 42 U.S.C. § 1983.  Neither states nor state officials sued in their official capacities for monetary damages or retrospective equitable relief are persons within the meaning of § 1983. *Will*, 491 U.S. at 70-71.

Here, Plaintiff's official capacity claims against Defendants, all of whom are UCCS employees, constitute claims against UCCS itself.  As part of the University of Colorado system, UCCS is considered an arm of the State of Colorado for purposes of Eleventh Amendment immunity.  *See Harrison v. Univ. of Colo. Heath Sci. Ctr.*, 337 F. App'x 750, 753 (10th Cir. 2009) (concluding that the University of Colorado, its divisions, and its employees sued in their official capacities, are all entitled to Eleventh Amendment immunity); *Sturdevant v. Paulsen*, 218 F.3d 1160, 1170 (10th Cir. 2000) ("the University of Colorado is an arm of the State"). Accordingly, Plaintiff's official capacity claims for monetary damages and retrospective equitable relief are barred by the Eleventh Amendment, and they should be dismissed without prejudice, pursuant to Rule 12(b)(1), for a lack of subject matter jurisdiction.  *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004) (affirming the dismissal of official capacity claims for monetary damages and retrospective declaratory relief against a state university chancellor as barred by the Eleventh Amendment); *see also Starkey ex rel. A.B. v. Boulder Cnty. Soc. Serv.*, 569 F.3d 1244, 1260 (10th Cir. 2009) (noting the jurisdictional nature of Eleventh Amendment sovereign immunity).

### B.  The Remaining Official Capacity Claims

In addition to money damages, Plaintiff requests equitable relief.  (Doc. No. 1 at 14.) Under *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment does not preclude certain equitable relief claims made against state officials acting in their official capacities.  *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  To fall within the narrow *Ex parte Young* exception to Eleventh Amendment immunity, "there must be an 'ongoing violation of federal

law,'" and the relief sought must be prospective in nature. *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations omitted). Notably, the *Ex parte Young* doctrine "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Id.* at 494. Further, the state official sued in their official capacity must have the actual power to provide the particular prospective relief at issue. *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (citing *Ex parte Young*, 209 U.S. at 157). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)); *see also Abu-Fakher v. Bode*, 175 F. App'x 179, 181-82 (10th Cir. 2006) (observing that, in order for the *Ex parte Young* exception to apply, the § 1983 complaint must also plausibly allege a violation of the plaintiff's constitutional rights).

Plaintiff argues that his Complaint "clearly allege[s]" official capacity claims against Defendants that fall within the *Ex parte Young* exception. (Doc. No. 17 at ¶ 6; Doc. No. 18 at ¶ 6.) Specifically, Mr. Halik identifies two purportedly "ongoing violation(s) of federal law" for which prospective injunctive relief is sought: (1) Defendant Litchfield's failure to "correct" and/or "update" certain UCCS "policies" relating to UCCS police officers' interactions with the public; and (2) Defendant Litchfield's "active obstruction of the investigation to hold Defendants Pinnock and Dipzinski accountable." (*Id.*)

The Complaint indeed alleges that Defendant Litchfield continues to "refus[e] to hold Defendants Pinnock and Dipzinski accountable for their actions." (Doc. No. 1 at ¶ 38.) However, to the extent that Plaintiff seeks prospective injunctive relief to remedy Defendant Litchfield's ongoing failure to investigate and/or to punish those two individuals, the harm about which he complains—*viz.,* the purportedly unlawful searches and seizures that took place on the evening of September 10, 2019—has already occurred. As such, Plaintiff "is merely seeking to address alleged past harms rather than prevent prospective violations of federal law." *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012). His claim is, therefore, one for retrospective relief, which does not fall within the *Ex parte Young* exception. Accordingly, Plaintiff's official capacity claim based on Defendant Litchfield's purported failure to investigate and/or punish Defendants Dipzinski and Pinnock is barred by the Eleventh Amendment, and should be dismissed on that basis.

The Complaint also alleges that Defendant Litchfield continues to "maintain[]" unconstitutional UCCS "policies" that give campus law enforcement "unobstructed, unfettered authority" to "detain" individuals "without any reasonable suspicion or probable cause." (Doc. No. 1 at ¶¶ 28-29.) Plaintiff argues that he seeks to remedy this "ongoing violation of federal law" through some sort of ordered modification to these policies, *i.e.,* a form of prospective relief. (Doc. No. 17 at ¶ 6.) In making that argument, Plaintiff references his Complaint's demand for "injunctive relief." (*Id.*) Defendants argue that Plaintiff's allegations cannot be plausibly read as asserting a claim for prospective relief, because the Complaint does not explicitly request a modification of the UCCS policies. (Doc. No. 21 at 7-8.) In addition,

Defendants argue that Plaintiff's mere inclusion of the words "injunctive relief" in his prayer for relief "does not plead a request for prospective relief."  (*Id.* at 8.)

On this issue, the Court agrees with Defendants that the overall thrust of the Complaint is to redress alleged constitutional harms suffered by Mr. Halik on the evening of September 10, 2019.  *See Buchheit*, 705 F. 3d at 1159 (holding that when a claim "is merely seeking to address alleged past harms rather than prevent prospective violations of federal law, [the court] can only reasonably categorize such relief as retrospective").  To the extent that the Complaint can be read as seeking injunctive relief to stop future unlawful searches and seizures by the UCCS campus police, Mr. Halik alleges no specific facts from which to reasonably infer an ongoing pattern or practice of such action.  Indeed, aside from recounting the searches and seizures that took place on September 10, 2019, Plaintiff alleges only that UCCS police officers "routinely use" policies from the Student Code of Conduct to violate the constitutional rights of unspecified "students and members of the public."  (Doc. No. 1 at ¶ 29.)  These allegations, alone, are insufficient to plausibly suggest an "ongoing" violation of federal constitutional law.  *See Williams v. Utah Dep't of Corrs.*, 928 F.3d 1209, 1214 (10th Cir. 2019) (stating that the *Ex parte Young* doctrine only applies "if the complaint alleges an ongoing violation of federal law"); *Smith v. Allbaugh*. No. CIV-16-654-HE, 2018 WL 4402968, at *9 (W.D. Okla. Apr. 30, 2018) (finding that a plaintiff's official capacity claims against a state prison official did not fall within the *Ex parte Young* exception, where the plaintiff sought injunctive orders to stop future religious discrimination against prisoners, but alleged no facts from which to infer "an ongoing pattern or practice" of such discrimination), *report and recommendation adopted by* 2018 WL 2966945 (W.D. Okla. June 13, 2018).  Moreover, it is well-settled that an injunction "must be narrowly

tailored to remedy the harm shown." *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir. 2002); *see* Fed. R. Civ. P. 65(d).  Here, Plaintiff fails to even broadly describe the form of modification to UCCS policy, if any, that he seeks.  *See Starkey v. Boulder Cnty. Soc. Servs.*, No. 06-cv-00659-LTB-PAC, 2006 WL 8073690, at *7 (D. Colo. Nov. 21, 2006) (dismissing an official capacity claim seeking to enjoin the defendants from "continuing efforts to deny the [plaintiffs'] parental rights, and to discriminate against [the plaintiffs] based on their religion" as "overly broad, speculative and [] not narrowly tailored to end an alleged violation of federal law").  Accordingly, Plaintiff's official capacity claims do not fall within the *Ex parte Young* exception to state sovereign immunity.  The Court, therefore, recommends that all of Plaintiff's official capacity claims be dismissed without prejudice, under Rule 12(b)(1), as barred by the Eleventh Amendment.

### III.  The Individual Capacity Claims

#### A.  Defendant Litchfield

Turning to the individual capacity claims, the Complaint alleges that Defendant Litchfield violated Plaintiff's Fourth Amendment rights in three ways: (1) by "supervising and overseeing the unlawful activities in which Defendants Pinnock and Dipzinski violated Plaintiff's constitutional rights;" (2) by "enacting and enforcing policies that ensured the incident on September 10, 2019 would take place;" and (3) by "refusing to hold Defendants Pinnock and Dipzinski accountable" for violating Plaintiff's constitutional rights.  (Doc. No. 1 at ¶ 38.) Defendant Litchfield moves to dismiss these claims on qualified immunity grounds, arguing that the Complaint fails to adequately allege an "affirmative link" between his purported misconduct and any violation of Mr. Halik's constitutional rights.  (Doc. No. 13 at 4-12.)

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Here, Plaintiff's individual capacity claims against Defendant Litchfield are predicated solely upon a theory of supervisory liability.[1] "[S]upervisory liability allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (alterations and internal quotation marks omitted). However, supervisory status, alone, is insufficient to support a claim for relief. *Brown*, 662 F.3d at 1164 ("Section 1983 does not authorize liability under a theory of respondeat superior."). Rather, there must be an 'affirmative link' between the supervisor and the constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)). An "affirmative link" requires "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Cox*, 800 F.3d at 1248 (quoting *Dodds*, 614 F.3d at 1195).

The first element of the affirmative link requires a showing that the defendant "actively participated or acquiesced in the constitutional violation." *Serna v. Colo. Dep't of Corrs.*, 455

---

[1] Mr. Halik does not allege that Defendant Litchfield was physically present during the contested searches and seizures by Defendants Dipzinski and Pinnock, or that Defendant Litchfield had any specific, contemporaneous knowledge of those events at the time of their occurrence. Thus, Plaintiff's claims against Defendant Litchfield must be premised on a theory of supervisory liability. *See Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) ("Ms. Cox's individual-capacity claim against Sheriff Glanz is predicated on a supervisory-liability theory. It is undisputed that Sheriff Glanz had no personal contact with Mr. Jernegan or direct and contemporaneous knowledge of Mr. Jernegan's treatment by Jail officials in July 2009.").

F.3d 1146, 1152 (10th Cir. 2006) (citation omitted).  The "causation" element requires a showing

that the defendant "set in motion a series of events" that he "knew or reasonably should have

known" would cause others to violate the plaintiff's constitutional rights.  *Schneider*, 717 F.3d at

768 (citation omitted). The third and final element requires a showing that the defendant acted

with "deliberate indifference" to the conduct of his subordinates.  *Dodds*, 614 F.3d at 1196;

*Serna*, 455 F.3d at 1151 ("Because mere negligence is not enough to hold a supervisor liable

under § 1983, a plaintiff must establish that the supervisor acted knowingly or with deliberate

indifference that a constitutional violation would occur.") (internal quotation marks omitted).

### 1. *Failure to Supervise*

Plaintiff alleges, first, that Defendant Litchfield violated his Fourth Amendment rights by

failing to adequately supervise Defendants Dipzinski and Pinnock.  (Doc. No. 1 at ¶ 38.)

However, the Complaint is devoid of any specific, factual allegations regarding the nature of

Defendant Litchfield's supervision of those individuals, or its purported deficiencies.  *See Guy v.

Jorstad*, No. 12-cv-01249-RM-KMT, 2014 WL 1581790, at *3 (D. Colo. April 21, 2014)

(dismissing a supervisory liability claim on that basis).  Nor are there any allegations as to how

Defendant Litchfield's purportedly inadequate supervision of Defendants Dipzinski and Pinnock

caused Plaintiff's constitutional injuries, or how such injuries could have been avoided with

different or improved supervision.  Absent such allegations, Plaintiff's failure to supervise claim

should be dismissed.  *See Sanaah v. Howell*, 384 F. App'x 737, 740 (10th Cir. 2010) (affirming

the dismissal of supervisory liability claims, where the plaintiff provided "only general and

conclusory allegations, unsupported by facts, that [the defendants] showed deliberate

indifference by failing to supervise or train their employees"); *Rehberg v. City of Pueblo*, No. 10-

cv-00261-LTB-KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012) (finding supervisory liability claims to be inadequately pleaded, where the plaintiff did "not proffer any facts regarding the officers' training or supervision—when it occurred, who conducted it, or how it was deficient").

## 2. *Promulgation and/or Enforcement of Unconstitutional Policy*

Plaintiff next alleges that Defendant Litchfield should be held liable for "enacting and enforcing" certain "policies" that effectively allowed Defendants Dipzinski and Pinnock to violate his Fourth Amendment rights.  (Doc. No. 1 at ¶ 38.)  To prevail on such a theory of liability, Plaintiff must first "identify the specific policies over which" Defendant Litchfield was responsible "that led to the alleged" constitutional rights violations at issue.  *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013).

Here, Mr. Halik alleges that various UCCS policies "grant unobstructed, unfettered authority" to campus police officers, effectively allowing them "to infringe on the rights of citizens without exception."  (Doc. No. 1 at ¶ 29 & n.6.)  In particular, Plaintiff references a provision of the UCCS Student of Conduct, which apparently forbids students from "[i]nterfering with, obstructing or disrupting police or fire response[,]" including by "[f]ailing to abide by the directions of a peace officer."  (*Id.* at ¶ 29.)  Mr. Halik claims that Defendant Litchfield permits UCCS police officers to "use this incredibly broad and overly vague provision" as a pretextual justification to "arbitrarily detain anyone" without reasonable suspicion or probable cause.  (*Id.* at ¶ 28.)

However, the Complaint does not allege that Defendant Litchfield himself applied any particular policy or rule to Defendants Dipzinski and Pinnock.  The Complaint is also devoid of

any specific facts that link Defendant Litchfield's alleged maintenance of an unconstitutional policy with the purportedly illegal searches and seizures at issue. *See Guy*, 2014 WL 1581790, at *4 (holding allegations—that the defendant promulgated and implemented "vague, confusing and contradictory" policies that "proximately caused" a violation of the plaintiff's Eighth Amendment rights—to be "simply insufficient" to show a causal connection between the policies and the alleged constitutional injury); *see also Raisdana v. City of Wichita*, No. 92-1195-PFK, 1993 WL 302233, at *4 (D. Kan. July 23, 1993) (finding no § 1983 liability based on a purportedly "vague and inadequate" policy that "allow[ed]" police officers "to engage in unconstitutional seizures," because even if the policy did not "provide the police with direction regarding the constitutionality of types of stops," there was no causal link between the policy and the alleged constitutional injuries). The Complaint also fails to allege any facts that give rise to a plausible inference that Defendant Litchfield acted with deliberate indifference with respect to his maintenance of an unconstitutional policy. *Dodds*, 614 F.3d at 1199. For instance, Plaintiff does not allege other instances in which the purportedly "broad and overly vague" provision of the UCCS Student Code of Conduct resulted in illegal searches and seizures of which Defendant Litchfield was aware. Nor are there any other factual allegations that raise a plausible inference that Defendant Litchfield knew of, or consciously disregarded, a substantial risk of constitutional injury to Mr. Halik, resulting from any particular policy. *See Guy*, 2014 WL 1581790, at *4 (finding no supervisory liability under such circumstances); *see also Rozenberg v. Knight*, 542 F. App'x 711, 714 (10th Cir. 2013) (finding that an inmate failed to state a claim for supervisory liability against a prison official based on the implementation of a policy, because the inmate did not "allege[] with specificity that [the prison official] was aware of or deliberately indifferent to

a substantial risk of harm to him").  Instead, the allegations in the Complaint that seek to link

Defendant Litchfield to the allegedly unconstitutional policies and resulting injuries are nothing

more than conclusory, speculative statements, and thus, cannot support a claim for relief.  *See*

*Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021) (stating that a § 1983 plaintiff "must plead

facts sufficient to support" a supervisory liability claim and "may not stand on mere conclusory

allegations"); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a

right to relief above the speculative level[.]").  For these reasons, Plaintiff should not be

permitted to proceed with respect to this claim.

### 3.  *Failure to Admonish or Hold Accountable*

Finally, the Complaint alleges that Defendant Litchfield should be held liable for failing

to take corrective action against Defendants Dipzinski and Pinnock for violating Plaintiff's

Fourth Amendment rights.  (Doc. No. 1 at ¶ 38.)  However, rarely if ever is the failure to

discipline in a specific instance adequate to show an affirmative link between a supervisor's

conduct and the constitutional violations committed by his subordinates.  *See Cordova v.*

*Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("A failure to investigate or reprimand might also

cause a future violation by sending a message to officers that such behavior is tolerated.  It does

not, however, in and of itself constitute a causal connection in the immediate case."); *Butler v.*

*City of Norman*, 992 F.2d 1053, 1055-56 (10th Cir. 1993) (holding evidence of a police chief's

failure to discipline arresting officers for their use of excessive force in a single instance to be

inadequate to support a finding of an affirmative link between the actions of the arresting officers

and the police chief).

Here, Plaintiff alleges, first, that Defendant Litchfield "actively obstructed the investigation" into the actions of Defendants Dipzinski and Pinnock, so as to "protect" them. (Doc. No. 1 at ¶ 28.)  However, Plaintiff offers no facts to support this bare, conclusory allegation.  As such, Plaintiff has failed to state any viable claim for relief.

Mr. Halik also complains that Defendant Litchfield failed to "report[]" Defendants Dipzinski and Litchfield as being "corrupt officers."  (Doc. No. 1 at ¶ 34.)  Plaintiff alleges that Defendant Litchfield had an "affirmative obligation[]" to do so, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).  (*Id.*)  But as Defendant Litchfield points out, *Brady* and *Giglio* address the constitutionally mandated duties of prosecutors towards criminal defendants.  Specifically, in *Brady*, the United States Supreme Court recognized that a prosecutor violates a criminal defendant's due process rights by suppressing evidence favorable to the accused that is "material either to guilt or to punishment." 373 U.S. at 87.  *Giglio* likewise holds that, where the reliability of a witness may be determinative of guilt or innocence of a criminal defendant, a prosecutor's nondisclosure of material evidence affecting the reliability of the witness justifies a new trial.  405 U.S. at 153. Neither case obligates university administrators, such as Defendant Litchfield, to "report" civil rights violations allegedly committed by campus police officers.  Nor does Plaintiff claim any other basis for such a duty.  Accordingly, to the extent that Plaintiff asserts a Fourth Amendment claim against Defendant Litchfield arising from his failure to "report[]" Defendants Dipzinski and Pinnock, that claim should be dismissed as well.

### 4.  *Defendant Litchfield is Entitled to Qualified Immunity*

On this record, then, Plaintiff has failed to plausibly allege that Defendant Litchfield violated his constitutional rights.  Defendant Litchfield is, therefore, entitled to qualified immunity with respect to the individual capacity claims against him.  *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) ("If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity.");  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) ("[A] defendant is entitled to qualified immunity if the plaintiff fails to show a violation of a constitutional right at all."); *see also Perry v. Durborow*, 892 F.3d 1116, 1123, 1127 (10th Cir. 2018) (holding defendant was entitled to qualified immunity for claims based on supervisory conduct).  The Court, therefore, recommends that those claims be dismissed without prejudice.  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (stating that the dismissal of a pro se claim for inadequate pleading should ordinarily be without prejudice).

### B.  *Defendants Dipzinski and Pinnock*

### 1.  *Separation from Service Animal*

The Complaint alleges that Defendants Pinnock and Dipzinski personally violated Plaintiff's Fourth Amendment rights, by among other things, "unlawfully separating [him] from his service animal."  (Doc. No. 1 at ¶ 37.)  Defendants Pinnock and Dipzinski move to dismiss this claim on qualified immunity grounds.  (Doc. No. 14 at 4-6.)

Because Defendants Dispzinski and Pinnock have invoked qualified immunity, the Court in its discretion considers, first, whether the right that Plaintiff claims was "clearly established" at the time of the alleged misconduct.  *Brown*, 662 F.3d at 1164.  A right is "clearly established,"

only if "a Supreme Court or Tenth Circuit decision" is "on point," or if "the clearly established weight of authority" from other circuits has "found the law to be as the plaintiff maintains." *Farrell v. Montoya*, 878 F.3d 933, 937 (10th Cir. 2017) (quoting *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016)).  In other words, the legal principle at issue must exist as a matter of "settled law," meaning that it is "dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  A plaintiff need not show "the very act in question previously was held unlawful in order to establish the absence of qualified immunity." *Gutierrez*, 841 F.3d at 900 (quoting *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008)).  But a defendant "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *Id.* (quoting *City & Cnty. of S.F., Cal. v. Sheehan*, 575 U.S. 600, 611 (2015)) (alterations and quotation marks omitted).  Thus, clearly established law must be very close to the act alleged in the complaint and should not be defined at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  Rather, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Defendants argue that the particular right at issue here—which they frame as a "right against separation from one's service animal"—was not clearly established at the time of the events in question.  (Doc. No. 14 at 5.)  Plaintiff, in response, appears to argue that there is a constitutional prohibition against the removal of an individual's necessary "medical devices." (Doc. No. 18 at ¶ 9.)  However, he fails to cite any case law that defines the contours of this

purported right.  *See Reinhardt v. Kopcow*, 66 F. Supp. 3d 1348, 1360 (D. Colo. 2014) (finding a plaintiff's failure to cite case law showing the right at issue was clearly established was "fatal" to the claim).  Indeed, Mr. Halik concedes that he "is unable to dispute Defendants' assertion of qualified immunity for separation from his service animal."  (Doc. No. 18 at ¶ 9.)  Thus, Plaintiff has not carried his burden, in the face of the assertion of qualified immunity, to show that the law was clearly established as to his Fourth Amendment claim pertaining to the temporary separation from his disability service animal.  Nor has the Court, in its own review of the case law, been able to locate any opinions that would support a finding that the right at issue is clearly established.[2]  *See Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 843 (D. Nev. 2021) (holding that a county animal control officer, who removed the plaintiff's disability service dog from the plaintiff's vehicle and then placed the dog into a shelter, was entitled to qualified immunity with respect to the plaintiff's Fourth Amendment unlawful seizure claim, because "there is no clearly established law for the alleged constitutional violations"); *McKinley v. United States*, No. 3:14-cv-01931-HZ, 2015 WL 4663206, at *6 (D. Ore. Aug. 5, 2015) (finding no clearly established constitutional right to have a disability service animal in a hospital emergency room and dismissing a Fourth Amendment unlawful seizure claim for that reason).

---

[2] As Defendants point out, there is case law suggesting that the killing of an individual's companion or service animal may violate the Fourth Amendment's proscription against unlawful seizures.  *See, e.g.*, *Moore v. Town of Erie*, No. 12-cv-02497-CMA-MJW, 2013 WL 3786646, at *2-3 (D. Colo. July 19, 2013) (finding a viable Fourth Amendment seizure claim arising from the defendant's killing of the plaintiff's dog); *see also Kincheloe v. Caudle*, No. A-09-CA-010 LY, 2009 WL 3381047, at *6 & n.3 (W.D. Tex. Oct. 16, 2009) ("[E]very circuit that has considered the issue has held that the killing of a companion dog constitutes a 'seizure' within the meaning of the Fourth Amendment[.]") (collecting cases).  However, no such facts are alleged here.

Because Plaintiff has failed to show that the constitutional right at issue was clearly established, Defendants Pinnock and Dipzinski are entitled to qualified immunity with respect to this claim. *Holmes*, 830 F.3d at 1134-35. For that reason, the Fourth Amendment claim relating Plaintiff's temporary separation from his disability service dog should be dismissed.

### 2.  *Personal Participation*

Plaintiff also alleges that Defendants Dipzinski and Pinnock violated his Fourth Amendment rights, by unlawfully detaining him, by illegally searching his person and belongings, and by injuring his wrists. (Doc. No. 1 at ¶ 37.) Defendant Dipzinski moves to dismiss these remaining claims against her, arguing that Plaintiff has failed to plausibly allege her personal involvement in any constitutional injury. (Doc. No. 14 at 6-7.)

As discussed *supra*, a § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Personal liability, in contrast to supervisory liability, "must be based on personal involvement in the alleged constitutional violation." *Id.* (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)); *see Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (observing that "common to all § 1983 [claims] . . . is the requirement that liability be predicated on a violation traceable to a defendant-official's 'own individual actions'"). The defendant's "personal participation in the specific constitutional violation complained of is essential." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011). Further, in a § 1983 action involving multiple defendants, it is "particularly important" that the Complaint "make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective actions." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins v. Okla. ex rel. Dep't of*

*Human Servs.*, 519 F.3d 1242, 1249-50 (10th Cir. 2008)); *see also Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("To state a claim in federal court, a complaint must explain what each defendant did to [the plaintiff], when the defendant did it, how the defendant's actions harmed him []; and, what specific legal right the plaintiff believes the defendant violated.").

In this case, Plaintiff alleges that, on the evening of September 10, 2019, Defendant Dipzinski, a "sergeant" and "patrol supervisor" with the UCCS campus police, unlawfully "search[ed]" him, "detain[ed]" him, and "injur[ed]" his wrists, all in violation of his Fourth Amendment rights.  (Doc. No. 1 at ¶¶ 2, 7, 37.)  However, the Complaint lacks any specific, factual allegations connecting Defendant Dipzinski to the search of Plaintiff or his belongings. Nor are there any specific, factual allegations that show how, or to what extent, Defendant Dipzinski caused injury to Plaintiff's wrists.  Indeed, the Complaint's allegations make clear that Plaintiff had already been handcuffed and searched by Defendant Pinnock before Defendant Dipzinski arrived at the scene.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (holding that an officer could not be held liable for Fourth Amendment violations that occurred before the officer arrived on the scene).  The Complaint's allegations make equally clear that the temporary injury to Plaintiff's wrists was caused by the manner in which Defendant Pinnock locked the handcuffs.  (Doc. No. 1 at ¶ 22 & n.3.)  There are no allegations suggesting the duration of the handcuffing contributed to, or exacerbated, the injury.  Accordingly, the Fourth Amendment claims against Defendant Dipzinski, to the extent alleging unlawful searches and injury to Plaintiff's wrists, should be dismissed.

The Complaint alleges that, after Defendant Dipzinski arrived on the scene, she "unlawfully kept handcuffs on Plaintiff and kept him detained," despite having already verified his identification, and notwithstanding Plaintiff's "numerous requests to be released from custody." (Doc. No. 1 at ¶¶ 20-21.) Defendant Dipzinski argues that these allegations, alone, fail to show her personal involvement in Plaintiff's unlawful detainment, because the Complaint contains no facts tying her either to the initial decision to handcuff Plaintiff for refusing to show identification, or to the handcuffing itself. (Doc. No. 14 at 7.) However, the Complaint's allegations plausibly suggest that Defendant Dipzinski played an active role in the decision to continue to detain Mr. Halik subsequent to the confirmation of his identification, without Mr. Halik's consent or any suspicion at that point that Mr. Halik had committed a crime. (Doc. No. 1 at ¶¶ 17, 20-21.) Although discovery may prove otherwise, at this stage in the proceedings, Plaintiff's allegations can be fairly read to show Defendant Dipzinski's personal participation in his purportedly unlawful detainment. *See Sandberg v. Englewood, Colo.*, 727 F. App'x 950, 958 (10th Cir. 2018) (holding that officers' continued detainment of a suspect without consent or reasonable suspicion violated the Fourth Amendment); *Jordan v. Unified Gov't of Wyandotte Cnty.*, 100 F. Supp. 3d 1111, 1116 (D. Kan. 2015) (finding a viable unlawful seizure claim against officers who did not arrive at the scene until after the plaintiff was initially detained, where the complaint plausibly suggested that the plaintiff "was confined without his consent and without justification for 9 hours," and that the officers either "personally participated in the prolonged detention" or "failed to intervene to stop" it "despite having a realistic opportunity and sufficient time to do so"). Accordingly, Plaintiff's unlawful detainment claim against Defendant Dipzinski should proceed.

### 3. The Remaining Claims Against Defendant Pinnock

As a final matter, Plaintiff alleges that Defendant Pinnock violated his Fourth Amendment rights by: (1) "unlawfully detaining" him; (2) "unlawfully searching" him; and (3) "unlawfully and negligently injuring [his] wrists." (Doc. No. 1 at ¶ 37.) Defendant Pinnock offers no argument for the dismissal of these claims. (*See* Doc. No. 14.) Accordingly, Plaintiff's remaining Fourth Amendment claims against Defendant Pinnock, in his individual capacity, should proceed.

## CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that:

(1) "Defendant Litchfield's Motion to Dismiss Plaintiff's Complaint Under F.R.C.P. 12(b)(1) and F.R.C.P. 12(b)(6)" (Doc. No. 13) be **GRANTED**. Specifically, Plaintiff's official capacity claims against Defendant Litchfield should be **DISMISSED without prejudice**, under Rule 12(b)(1), for lack of subject matter jurisdiction. Plaintiff's remaining claims against Defendant Litchfield should be **DISMISSED without prejudice**, under Rule 12(b)(6), for failure to state a claim.

(2) "Defendants Robert Pinnock and Lisa Dipzinski's Partial Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (Doc. No. 14) be **GRANTED, in part, and DENIED, in part**. Specifically, Plaintiff's official capacity claims against Defendants Dipzinski and Pinnock should be **DISMISSED without prejudice**, under Rule 12(b)(1) for lack of subject matter jurisdiction. The Fourth Amendment claim against Defendants Dipzinski and Pinnock alleging a temporary separation from Plaintiff's disability service animal should be **DISMISSED without prejudice**, under Rule 12(b)(6), for failure to state a

claim.  The Fourth Amendment claims against Defendant Dipzinski alleging unlawful searches and injury to Plaintiff's wrists should also be **DISMISSED without prejudice**, under Rule 12(b)(6), for failure to state a claim.  The Motion should be **DENIED** in all other respects.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

 **DATED**: September 2, 2022.

BY THE COURT:

Maritza Dominguez Braswell
United States Magistrate Judge